# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CBX RESOURCES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 5:17-cv-00017-DAE |
| ACE AMERICAN INSURANCE | § | |
| COMPANY and ACE PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff CBX Resources, LLC ("CBX") complains herein of Defendant ACE American Insurance Company ("ACE American") and Defendant ACE Property and Casualty Insurance Company ("ACE Property") (collectively, "ACE" or "Defendants").

## I.    INTRODUCTION

1.    ACE American and ACE Property issued a CGL Policy and Umbrella Policy, respectively, to Espada for the policy period April 2, 2011 to April 2, 2012.[1]

2.    In the Underlying Lawsuit, CBX sued for damages to tangible property proximately caused by Espada's negligence as an oil and gas operator.  Those damages occurred between August 6, 2011 and January 25, 2012.

3.    In the Underlying Lawsuit, ACE American controlled Espada's defense and hired a law firm, Royston Rayzor, to defend Espada. ACE American did not formally attempt to reserve its rights or otherwise dispute the existence of coverage

---

[1] Please see the "Definitions" sub-section of the "Facts" section below for definitions of the defined terms found in this introduction.

under the applicable insurance policy.  Pursuant to ACE American's retention, Royston Rayzor represented Espada for two years in the Underlying Lawsuit.

4.      Approximately three-months before trial, CBX served a *Stowers* Demand on ACE American and ACE Property.  Roughly one month after the service of that demand, ACE American and ACE Property withdrew their defense of Espada.

5.      The Underlying Lawsuit proceeded to trial on February 10, 2016. Following the trial, the state district court entered judgment for CBX and against Espada in the Underlying Lawsuit in the amount of $105,674,240, representing CBX's proven actual damages proximately caused by Espada's proven negligence.  The trial court's judgment also awarded *inter alia* post-judgment interest.

6.      On November 1, 2016, the state district court entered an order transferring to CBX, Espada's claims against ACE American and ACE Property.

7.      CBX files the above styled lawsuit as a judgment creditor of Espada and a third-party beneficiary of the CGL Policy and Umbrella Policy.  It is also the owner, by virtue of the state district court's transfer order, of Espada's contractual and extra-contractual claims against ACE American and ACE Property.

## II.     PARTIES

8.      Plaintiff CBX Resources, LLC is a Texas corporation, a citizen of Texas, organized under the laws of Texas, and has its principal place of business in Boerne, Texas.

9.      Defendant, ACE AMERICAN INSURANCE COMPANY, is a foreign insurance carrier organized and existing under the laws of Pennsylvania and authorized to conduct business in Texas.  It may be served with process by serving its

designated agent for service of process, C T Corporation System, in Dallas County at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

10.     Defendant, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, is a foreign insurance carrier organized and existing under the laws of Pennsylvania and authorized to conduct business in Texas.  It may be served with process by serving its designated agent for service of process, C T Corporation System, in Dallas County at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

### III.    JURISDICTION

11.     Because this action, which has an amount in controversy in excess of $75,000, is between citizens of different U.S. states, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a).

12.     This Court has general personal jurisdiction over ACE American Insurance Company and ACE Property and Casualty Insurance Company because each does business in Texas and each has sufficient contacts with the State of Texas, both generally and with regard to this specific action, so that the exercise of personal jurisdiction over it is proper.

13.     Further, this Court has specific personal jurisdiction over ACE American Insurance Company and ACE Property and Casualty Insurance Company because the facts giving rise to the claims made in this lawsuit all occurred in the State of Texas.

### IV.    VENUE

14.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim, as detailed below, occurred in this district.

## V.    FACTS

### A.    DEFINITIONS

15.    "ACE American" means ACE American Insurance Company.

16.    "ACE Property" means ACE Property and Casualty Insurance Company.

17.    "ACE" means ACE American and ACE Property collectively.

18.    "CBX" means CBX Resources, LLC.

19.    "CGL Policy" means Commercial General Liability Policy No. G24994090 002 issued by ACE American Insurance Company to Espada Operating, LLC.

20.    "Espada" means Espada Operating, LLC.

21.    "Live Petition" means Plaintiff's Second Amended Petition filed in the Underlying Lawsuit and attached hereto as Exhibit I.

22.    "Occurrence" means the accident described in the Live Petition.

23.    "Royston Rayzor" means Royston, Rayzor, Vickery & Williams, LLP.

24.    "Umbrella Policy" means Umbrella Policy No. G24924592 issued by ACE Property and Casualty Insurance Company to Espada Operating, LLC.

25.    "Underlying Lawsuit" means Cause No. 13-02-12940-ZCV; *CBX Resources, LLC v. Daewoo International Corp., et al*; in the 293rd Judicial District, Zavala County, Texas.

26.    "Underlying Judgment" means the February 10, 2016 judgment entered in the Underlying Lawsuit and attached hereto as Exhibit Q.

27.    "UREC Endorsement" means the "Underground Resources and Equipment Coverage Endorsement" that is a part of the "CGL Policy." (Ex. A, CBX 429650-000052:53.)

**B.**     EXHIBITS

28.     **Exhibit A** to this Complaint, at bates number CBX 429650-000001 to CBX 429650-000071, is a copy of the Commercial General Liability Policy No. G24994090 002 issued by ACE American to Espada.

29.     The document attached as Exhibit A is a genuine copy of that document.

30.     **Exhibit B** to this Complaint, at bates number CBX 429650-000072, is a copy of the Declarations Page of Umbrella Policy No. G24924592 issued by ACE Property to Espada.

31.     The document attached as Exhibit B is a genuine copy of that document.

32.     **Exhibit C** to this Complaint, at bates number CBX 429650-000073 to CBX 429650-000080, is a copy of Plaintiff's Original Petition and Requests for Disclosure filed in the Underlying Lawsuit.

33.     The document attached as Exhibit C is a genuine copy of that document.

34.     **Exhibit D** to this Complaint, at bates number CBX 429650-000081 to CBX 429650-000102, is a copy of Plaintiff's First Amended Petition and Requests for Disclosure filed in the Underlying Lawsuit.

35.     The document attached as Exhibit D is a genuine copy of that document.

36.     **Exhibit E** to this Complaint, at bates number CBX 429650-000103 to CBX 429650-000105, is a copy of Defendant Espada Operating, LLC's Original Answer filed in the Underlying Lawsuit.

37.     The document attached as Exhibit E is a genuine copy of that document.

38.     **Exhibit F** to this Complaint, at bates number CBX 429650-000106 to CBX 429650-000109, is a copy of Defendant Espada Operating LLC's Responses to CBX

Resources, LLC's Request for Disclosure served during the pendency of the Underlying Lawsuit.

39.    The document attached as Exhibit F is a genuine copy of that document.

40.    **Exhibit G** to this Complaint, at bates number CBX 429650-000110 to CBX 429650-000113, is a copy of Defendant Espada Operating, LLC's First Amended Original Answer filed in the Underlying Lawsuit.

41.    The document attached as Exhibit G is a genuine copy of that document.

42.    **Exhibit H** to this Complaint, at bates number CBX 429650-000114 to CBX 429650-000119, is a copy of the Third Amended Docket Control Order entered in the Underlying Lawsuit.

43.    The document attached as Exhibit H is a genuine copy of that document.

44.    **Exhibit I** to this Complaint, at bates number CBX 429650-000120 to CBX 429650-000132, is a copy of Plaintiff's Second Amended Petition filed in the Underlying Lawsuit.

45.    The document attached as Exhibit I is a genuine copy of that document.

46.    **Exhibit J** to this Complaint, at bates number CBX 429650-000133 to CBX 429650-000159, is a copy of Espada Operating, LLC's First Amended Third Party Petition filed in the Underlying Lawsuit.

47.    The document attached as Exhibit J is a genuine copy of that document.

48.    **Exhibit K** to this Complaint, at bates number CBX 429650-000160 to CBX 429650-000165, is a copy of the September 22, 2015 Offer to Settle Sent from Edward Allred to Ewing Sikes served during the pendency of the Underlying Lawsuit.

49.    The document attached as Exhibit K is a genuine copy of that document.

---

50.    **Exhibit L** to this Complaint, at bates number CBX 429650-000166, is a copy of a September 30, 2015 E-mail from Eddie Sikes to Edward Allred.

51.    The document attached as Exhibit L is a genuine copy of that document.

52.    **Exhibit M** to this Complaint, at bates number CBX 429650-000167 to CBX 429650-000169, is a copy of the October 1, 2015 E-mail from Eddies Sikes to David Ortega.

53.    The document attached as Exhibit M is a genuine copy of that document.

54.    **Exhibit N** to this Complaint, at bates number CBX 429650-000170 to CBX 429650-000173, is a copy of a October 15, 2015 letter from Matthew Spector to Lee Roy Billington served during the pendency of the Underlying Lawsuit.

55.    The document attached as Exhibit N is a genuine copy of that document.

56.    **Exhibit O** to this Complaint, at bates number CBX 429650-000174 to CBX 429650-000188, is a copy of the Royston Rayzor's Motion to Withdraw as Counsel for Espada Operating, LLC filed in the Underlying Lawsuit.

57.    The document attached as Exhibit O is a genuine copy of that document.

58.    **Exhibit P** to this Complaint, at bates number CBX 429650-000189, is a copy of the Order of Withdrawal entered by the court in the Underlying Lawsuit.

59.    The document attached as Exhibit P is a genuine copy of that document.

60.    **Exhibit Q** to this Complaint, at bates number CBX 429650-000190 to CBX 429650-000192, is a copy of the Final Judgment entered by the court in the Underlying Lawsuit.

61.    The document attached as Exhibit Q is a genuine copy of that document.

62.     **Exhibit R** to this Complaint, at bates number CBX 429650-000193 to CBX 429650-000274, is a copy of the <u>Transcript of the Trial of the Underlying Lawsuit Held On February 10, 2016</u>.

63.     The document attached as Exhibit R is a genuine copy of that document.

64.     **Exhibit S** to this Complaint, at bates number CBX 429650-000275 to CBX 429650-000287, is a copy of a <u>Redline Comparing the First and Second Amended Petitions filed in the Underlying Lawsuit</u>.

65.     The document attached as Exhibit S is a genuine copy of that document.

66.     **Exhibit T** to this Complaint, at bates number CBX 429650-000288 to CBX 429650-000292, is a copy of <u>Trial Exhibit 38 Entered During the Underlying Trial</u>.

67.     The document attached as Exhibit T is a genuine copy of that document.

68.     **Exhibit U** to this Complaint, at bates number CBX 429650-000293 to CBX 429650-000294, is a copy of the <u>Abstract of Judgment Filed in Bexar County</u>.

69.     The document attached as Exhibit U is a genuine copy of that document.

70.     **Exhibit V** to this Complaint, at bates number CBX 429650-000295 to CBX 429650-000296, is a copy of the <u>Abstract of Judgment Filed in Zavala County</u>.

71.     The document attached as Exhibit V is a genuine copy of that document.

72.     **Exhibit W** to this Complaint, at bates number CBX 429650-000297 to CBX 429650-000300 is a copy of the <u>November 1, 2016 Order for Turnover Relief</u>.

73.     The document attached as Exhibit W is a genuine copy of that document.

74.     **Exhibit X** to this Complaint, at bates number CBX 429650-000301, is a copy of a <u>November 8, 2016 Assignment of Cause of Action</u>.

75.     The document attached as Exhibit X is a genuine copy of that document.

C.  THE INSURERS

76.  ACE American and ACE Property are interconnected companies.

77.  ACE American and ACE Property are both part of the ACE group of companies.

78.  ACE American and ACE Property share common ownership.

79.  ACE American and ACE Property have common affiliates.

80.  ACE North American Claims is an affiliate of ACE American and ACE Property.

81.  ACE American and ACE Property are affiliates of one another.

82.  ACE American and ACE Property share common management.

83.  ACE American and ACE Property issued the CGL Policy and Umbrella Policy as connected insurance policies.

84.  ACE American and ACE Property were represented by common employees.

85.  Matthew Spector had the authority to bind ACE American and ACE Property.

86.  Xavier Blum supervised the administration of the CGL Policy and Umbrella Policy.

D.  THE CGL POLICY

1.  **Basic Insuring Agreement – Property Damage Covered**

87.  ACE American issued the CGL Policy to Espada for the policy period April 2, 2011 to April 2, 2012.  (Ex. A; Ex. N, CBX 429650-000170.)

88.  Espada is a named insured in the CGL Policy.  (Ex. A, CBX 429650-000001.)

POLICY NUMBER: G24994090 002

COMMERCIAL GENERAL LIABILITY
CG DS 01 10 01

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

| ACE American Insurance Company<br>P.O. Box 1000<br>436 Walnut Street<br>Philadelphia, PA 19106 | GENERAL AGENCY SERVICES INC<br>3700 E RIVER ROAD<br>MT PLEASANT  MI 48858 |
|---|---|

NAMED INSURED:    Espada Operating, LLC
MAILING ADDRESS:    8918 Tesoro Dr ., Ste 500
San Antonio, TX 78217

89.    The CGL Policy's declarations page described Espada's "Business Description" as "Oil and Gas Operations."  (Ex. A, CBX 429650-000001.)

90.    The CGL Policy declarations identifying Espada Operating as the named insured and identifying its business as "Oil and Gas Operations" are unambiguous.

91.    In the Underlying Lawsuit, CBX alleged property damage.  (Ex. I, CB 429650-000122, 123, 127, 128, 129.)

92.    Section I.A.1.a. of the CGL Policy states the "Insuring Agreement" and "Duty to Defend" with regard to "Property Damage Liability."  (Ex. A, CBX 429650-000003.)

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

93.   Section 1.A.1.a of the CGL Policy is unambiguous.

94.   Section I.A.1.a. of the CGL Policy obligated ACE American to defend Espada.

95.   The CGL Policy gave ACE American the right to control Espada's defense in the Underlying Lawsuit.

96.   ACE American in fact controlled Espada's defense in the Underlying Lawsuit.

97.   ACE American in fact controlled Espada's defense in the Underlying Lawsuit for over two years.

98.   The CGL Policy defines "Property damage" to mean "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (Ex. A, CBX 429650-000017.)

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

99.    These definitions in Section V.17 are unambiguous.

100.    Section I.A.1.b. of the CGL Policy limits the scope of the insurance by "coverage territory" and "policy period." (Ex. A, CBX 429650-000003.)

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

101.    Section I.A.1.b of the CGL policy is unambiguous.

102.    The CGL Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. A, CBX 429650-000016.)

> **13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

103.    The definition of "occurrence" in Section V.13 of the CGL Policy is unambiguous.

104.    The CGL Policy defines "Coverage Territory" to include "The United States of America." (Ex. A, CBX 429650-000015.)

> **4. "Coverage territory" means:**
>
> **a. The United States of America (including its territories and possessions), Puerto Rico and Canada;**

105.    The Occurrence described in the Live Petition took place in the "coverage territory."

106.    The Occurrence described in the Live Petition took place in Zavala County, Texas.

107.    There is a claim of an "occurrence" in the Live Petition according to the terms of the CGL Policy.

108.    The property damage described in the Live Petition was unexpected.

109.   The property damage described in the Live Petition was caused by an accident.

110.   The property damage described in the Live Petition occurred between April 2, 2011 and April 2, 2012.

111.   The property damage described in the Live Petition occurred between August 6, 2011 and January 25, 2012.

### 2.   Underground Resources and Equipment Coverage Endorsement

112.   An "Underground Resources and Equipment Coverage Endorsement" ("UREC Endorsement") "change[d]" and "modifie[d]" the CGL Policy.  (Ex. A, CBX 429650-000052.)

### UNDERGROUND RESOURCES AND EQUIPMENT COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Espada Operating, LLC** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **PMG** | **G24994090 002** | **04/02/2011 - 04/02/2012** | **04/02/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This Endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

113.   In sum, the UREC Endorsement (1) adds limits of insurance, (2) replaces an exclusion, and (3) adds definitions to the CGL Policy.

114.   First, the UREC Endorsement adds limits of insurance.  (Ex. A, CBX 429650-000052:53.)

I.  With respect to "property damage" included within the "underground resources hazard" or the "underground equipment hazard" the following is added to Section III – Limits Of Insurance:

    **A.** Subject to the Each Occurrence Limit and the General Aggregate Limit shown in the Declarations:

        1. The Underground Resources Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources hazard" and arising out of operations in connection with any one well;

        2. The Underground Equipment Hazard Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground equipment hazard" and arising out of operations in connection with any one well.

    **B.** The property damage aggregate limits shown in the Schedule above are subject to the General Aggregate Limit of Insurance stated in the Declarations. Any payment for "property damage" under this endorsement will be applied to and will erode the General Aggregate Limit of Insurance stated in the Declarations.

      115.   Second, the UREC endorsement *replaces* an exclusion.  (Ex. A, CBX 429650-000053.)

II.  Exclusion **j.(4)**, under Paragraph **2.** Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **a. Damage To Property**

    "Property damage" to:

      **(4)** Personal property in the care, custody or control of the insured;

      This exclusion does not apply to any "property damage" included within the "underground resources hazard" or the "underground equipment hazard" other than "property damage" to that particular part of any real property on which operations are being performed by you or on your behalf if the "property damage" arises out of those operations.

      116.   Finally, the UREC Endorsement adds definitions.  (Ex. A, CBX 429650-000053.)

III. The following definitions are added to the Definitions Section:

"Underground resources hazard" includes "property damage" to any of the following:

a. Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

b. Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on.

"Underground equipment hazard" includes "property damage" to any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

117.    The UREC Endorsement expands the scope of coverage of the CGL Policy.

118.    The UREC Endorsement is unambiguous.

119.    Espada paid an additional premium for the UREC Endorsement.

120.    Espada paid an additional premium for the expanded scope of coverage provided by the UREC Endorsement.

121.    The UREC Endorsement is a coverage adding endorsement.

122.    The UREC Endorsement broadened the definition of "property damage" found in the CGL Policy.

123.    The UREC Endorsement broadened the definition of "property damage" found in the CGL Policy to the extent that the property damage alleged in the Live Complaint was covered.

124.    The inherent nature of a coverage adding endorsement is to overcome exclusions of coverage.

125.    Coverage adding endorsements supersede conflicting exclusions in the main policy.

E.    UMBRELLA POLICY

126.    ACE Property issued the Umbrella Policy to Espada for the policy period April 2, 2011 to April 2, 2012. (Ex. B, CBX 429650-000072.)

F.     UNDERLYING LAWSUIT

1.     **February 21, 2013:  CBX's Original Petition**

127.     On February 21, 2013, CBX filed Plaintiff's Original Petition and Requests for Disclosure.  (Ex. C.)

128.     CBX did not name Espada as a defendant in Plaintiff's Original Petition. (Ex. C.)

129.     CBX stated in Plaintiff's Original Petition the following:  "In 2011, Plaintiff hired Espada Operating, LLC ("Espada") to drill and operate an oil and gas lease. . . . " (Ex. C, CBX 429650-000076.)

130.     CBX stated in Plaintiff's Original Petition the following:  "As a result of the action and conduct of the Defendants, Plaintiff has suffered actual and consequential damages.  These damages flow from the loss of it drilling operations due to the subsequent forced plugging and abandoning of the Picossa Creek IV well. Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other things." (Ex. C, CBX 429650-000079.)

**DAMAGES**

25.    As a result of the action and conduct of the Defendants, Plaintiff has suffered actual and consequential damages.  These damages flow from the loss of its drilling operations due to the subsequent forced plugging and abandoning of the Picossa Creek IV well.

26.    Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other things.

### 2.    October 29, 2013:  CBX's First Amended Petition

131.    On October 29, 2013, CBX filed Plaintiff's First Amended Petition and Requests for Disclosure.  (Ex. D.)

132.    CBX named Espada as a defendant in Plaintiff's First Amended Petition and Requests for Disclosure.  (Ex. D.)

133.    Espada did not challenge the sufficiency of the allegations in Plaintiff's First Amended Petition.

134.    Espada did not specially except (a right provided for by Texas Rule of Civil Procedure 91) to Plaintiff's First Amended Petition.

135.    In Plaintiff's First Amended Petition, CBX alleged that Espada was professionally negligent.  (Ex. D, CBX 429650-000087.)

136.    In Plaintiff's First Amended Petition, CBX alleged that Espada was negligent (i.e., non-professionally negligent).  (Ex. D, CBX 429650-000087.)

20.   Espada was retained for the purpose of implementing Baker's plan, procuring and using the proper materials to include casing, and to perform related oil and gas well drilling and completion services to deliver a producing well for the Plaintiff. Espada owed a duty to perform these duties within recognized industry standards and practices, as well as to deliver a competent well design that would allow for a completed and productive well.

21.   The Baker and Espada Defendants were|negligent in their performance of their respective duties, as more fully explained and detailed in the attached Affidavit and Certificate of Merit of David E. Pritchard, P.E. (Licensed Engineer). These deviations from accepted industry practices and standards constituted professional negligence. The Baker and Espada Defendants' actions contributed to and permitted the catastrophic failure of the Picossa Creek IV operation.

137.   The failures of Espada were "more fully explained and detailed in [an] Affidavit and Certificate of Merit of David E. Prichard, P.E. (Licensed Engineer)." (Ex. D, CBX 429650-000087.)

138.   In the Affidavit and Certificate of Merit of David E. Prichard, P.E., Mr. Pritchard detailed Espada's role as follows: "Espada, the operating company on the Well, was engaged in, and was retained on the Well, to procure and use the proper materials, and to perform oil and gas well drilling and completion operations to achieve a finished and productive oil and gas well for CBX Resources, the mineral owners for the Well." (Ex. D, CBX 429650-000093.)

> 4.      Based on my research, experience in the industry, and review of documents relating to the Well, Baker was engaged in, and was retained on the Well, to perform oil well design, material specification, engineering, and similar services relating to the process and procedures to be utilized in drilling and completing the Well. Espada, the operating company on the Well, was engaged in, and was retained on the Well, to procure and use the proper materials, and to perform oil and gas well drilling and completion operations to achieve a finished and productive oil and gas well for CBX Resources, the mineral owners for the Well.

139.   Further, Mr. Pritchard detailed the acts, errors, or omissions of Espada.

(Ex. D, CBX 429650-000095.)

8.    Based on my knowledge, skill, experience, education, training, practice, and a review of the documents listed above, it is my professional opinion that both Baker and Espada are responsible for at least the following act(s), error(s), or omission(s) that occurred and/or existed on the Well and that caused or contributed to the Well's failure:

    a.    Failure to correctly and/or accurately conduct a casing movement calculation;

    b.    Applying tension after the packers were set for stretch testing;

    c.    Accepting, and using casing that was not originally specified for this well.

    d.    Failing to require, perform, and review external pressure testing and/or torque-validated running in the well hole; and,

    e.    Excessive cuttings, including frac sand on clean-up in the open well hole.

9.    These acts, errors and/or omissions show that both Baker and Espada failed to meet the applicable work product standards of oil and gas design, engineering, drilling, and operating professionals.  Further, based upon the documents I have reviewed, the general factual occurrences as I understand them to be at this point, and further based upon my knowledge, skill, experience, education, training and practice in engineering and well design, drilling, completion, and oil and gas production practices, it is my professional opinion that these acts, errors, and/or omissions contributed to the failure of the Well, that absent these acts, errors, and/or omissions the Well would not have failed, that the commission of these acts, errors, and/or omissions renders the professional services provided insufficient and inadequate, and that the provision of services including these acts, errors, and/or omissions falls below the standard of professional standards that are usual, customary, and expected in the design, drilling, and completion of an oil well such and the Well and casing that failed in this case.

140.    In Plaintiff's First Amended Petition, CBX made the same damage allegations as were made in Plaintiff's Original Petition.  (Ex. D, CBX 429650-000088.)

---

**DAMAGES**

24.    As a result of the action and conduct of the Defendants, Plaintiff has suffered actual and consequential damages.  These damages flow from the loss of its drilling operations due to the subsequent forced plugging and abandoning of the Picossa Creek IV well.

25.    Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other things.

141.    In Plaintiff's First Amended Petition, CBX made additional damage allegations as follows: "The Baker and Espada Defendant's actions contributed to and permitted the catastrophic failure of the Picossa Creek IV operation. . . .  The breaches . . . [were] a proximate cause of the casing failure and Plaintiff's damage." (Ex. D, CBX 429650-000087:88.)

negligence.  The Baker and Espada Defendants' actions contributed to and permitted the catastrophic failure of the Picossa Creek IV operation.

23.    The breaches by of the Baker and Espada Defendants was a proximate cause of the casing failure and Plaintiff's damage.

**3.    November 19, 2013:  Espada's Original Answer**

142.    On November 19, 2013, Espada served Defendant Espada Operating, LLC's Original Answer. (Ex. E.)

143.    Espada served Defendant Espada Operating, LLC's Original Answer through its law firm Royston Rayzor.

> **WHEREFORE, PREMISES CONSIDERED,** Defendant, ESPADA OPERATING, LLC prays that Plaintiff takes nothing by this suit against Defendant and Defendant be discharged without delay, and for such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.
>
> Respectfully submitted,
>
> ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
>
> By: _____
> Ewing E. Sikes, III
> State Bar No. 00794631
> Robert L. Guerra, Jr.
> State Bar No. 24036694
> 55 Cove Circle
> Brownsville, Texas 78521
> Tel:    (956) 542-4377
> Fax:    (956) 542-4370

144.    In November of 2013, ACE American appointed Royston Rayzor as defense counsel for Espada.  (Ex. O, 429650-000174.)

> Good cause exists for granting this motion.  Royston Rayzor was appointed as defense counsel for Espada in the above styled cause of action in November 2013 by Espada's insurer, ACE American Insurance Company ("ACE").  On October 15, 2015, ACE advised that it had

145.    Espada did not assert any affirmative defenses in its original answer.

    **4.    January 27, 2014:  Espada's Responses to Requests for Disclosure**

146.    On January 27, 2014, Espada served Defendant Espada Operating LLC's Responses to CBX Resources, LLC's Request for Disclosure. (Ex. F.)

147.    In Defendant Espada Operating LLC's Responses to CBX Resources, LLC's Request for Disclosure, Espada indicated that Espada had "been correctly identified." (Ex. F, CBX 429650-000108.)

### 5.    April 7, 2014: Espada's First Amended Original Answer

148.    On April, 7, 2014, Espada served Defendant Espada Operating, LLC's First Amended Original Answer. (Ex. G.)

149.    Espada asserted affirmative defenses for the first time.

### 6.    December 30, 2014:   Court's Third Amended Docket Control Order

150.    On December 30, 2014, the court signed the Third Amended Docket Control Order. (Ex. H.)

151.    That Third Amended Docket Control Order set "Jury Selection and Trial" for February 9, 2016. (Ex. H, CBX 429650-000115.)

> 15.    Jury Selection and Trial are set for February 9, 2016, at 9:30 a.m.   This date is subject to the change by the Court. (Subject to change) CLH

152.    Royston Rayzor agreed to that February 9, 2016 trial. (Ex. H, CBX 429650-000116, 118.)

## APPROVED AS TO FORM AND ENTRY:

*Ewing Sikes, III*

EWING E. SIKES, III
SBN:  00794631
ROBERT L. GUERRA, JR.
SBN:  24036694
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
55 Cove Circle
Brownsville, Texas 78521
Telephone:    (956) 542-4377
Facsimile:    (956) 542-4370

*by ENR with permission*

**ATTORNEYS FOR DEFENDANT ESPADA OPERATING, LLC**

### 7.    August 7, 2015:  CBX's Second Amended Petition

153.    On August 7, 2015, CBX filed Plaintiff's Second Amended Petition.  (Ex. I.)

154.    Espada did not challenge the sufficiency of the allegations in Plaintiff's Second Amended Petition.

155.    Espada did not specially except (a right provided for by Texas Rule of Civil Procedure 91) to Plaintiff's Second Amended Petition.

#### a)    The Live Petition at Time of Trial

156.    CBX did not amend Plaintiff's Second Amended Petition.

157.    CBX did not supplement Plaintiff's Second Amended Petition.

158.    Plaintiff's Second Amended Petition was the live petition at the time of trial.

159.    In Plaintiff's Second Amended Petition, CBX stated Espada's role: "On or about June 27, 2011, Plaintiff hired Espada Operating, LLC ("Espada") to drill and operate an oil and gas lease. . . . " (Ex. I, CBX 429650-000122.)

#### b)    The Same Simple Negligence Claim Remained

---

160.    Exhibit S is a "redline" comparing Plaintiff's First Amended Petition and Plaintiff's Second Amended Petition. (Ex. S.)

161.    CBX made no substantive change to the negligence claim made against Espada as between Plaintiff's First Amended Petition and Plaintiff's Second Amended Petition. (Ex. D, I, S.)



30.    The Defendants also failed to provide adequate warnings regarding the casing's susceptibility to failure, which risk was known or by the application of reasonably developed skill and foresight should have been known to the Defendants.

31.    The negligence of the Defendants was a proximate cause of the casing failure and Plaintiff's damages.

### VII.    THIRD CAUSE OF ACTION – NEGLIGENCE (BAKER AND ESPADA DEFENDANTS)

32.    Baker was retained for the purpose of performing oil well design, material specification, engineering, and similar services relating to the process and procedures utilized in drilling and completing the Picosa Creek IV well. Baker owed a duty to perform these services within recognized industry standards and practices, as well as to deliver a competent well design that would allow for a completed and productive well.

33.    Espada was retained for the purpose of implementing Baker's plan, procuring and using the proper materials to include casing, and performing related oil and gas well drilling and completion services to deliver a producing well for Plaintiff. Espada owed a duty to perform these services within recognized industry standards and practices, as well as to deliver a competent well design that would result in a completed and productive well.

34.    The Baker and Espada Defendants were negligent in their performance of their respective duties, as more fully explained and detailed in the attached Affidavit and Certificate of Merit of David E. Pritchard, P.E. (Licensed Engineer). These deviations from accepted industry practices and standards constituted professional negligence. The Baker and Espada Defendants' actions contributed to and permitted the catastrophic failure of the Picosa Creek IV operation.

*Plaintiff's Second Amended Petition*                    Page 7 of 13

Edit 9/22/2016 11:01 AM
Deleted: warning

Edit 9/22/2016 11:01 AM
Deleted:

Edit 9/22/2016 11:01 AM
Formatted: Heading 1, Left

Edit 9/22/2016 11:01 AM
Formatted: Font:Not Bold, No underline

Edit 9/22/2016 11:01 AM
Formatted: Font:+Theme Body, Not Bold

Edit 9/22/2016 11:01 AM
Formatted: Body Text,btf, Line spacing: single, No bullets or numbering

Edit 9/22/2016 11:01 AM
Deleted: Picosa

Edit 9/22/2016 11:01 AM
Deleted: duties

Edit 9/22/2016 11:01 AM
Deleted: to perform

Edit 9/22/2016 11:01 AM
Deleted: the

Edit 9/22/2016 11:01 AM
Deleted: duties

Edit 9/22/2016 11:01 AM
Deleted: allow for

Edit 9/22/2016 11:01 AM
Deleted: Picosa

Edit 9/22/2016 11:01 AM
Formatted: Default Paragraph Font

Edit 9/22/2016 11:01 AM
Deleted:

> 35.    The failures and deviations by the Baker and Espada Defendants breached
> their duties to perform their respective services within industry-accepted standards,
> practices, and requirements for well design, drilling, and completion.
>
> 36.    The breaches by the Baker and Espada Defendants were proximate causes
> of the casing failure and Plaintiff's damages.
>
> ### VIII.   FOURTH CAUSE OF ACTION – BREACH OF CONTRACT (ESPADA DEFENDANT)



162.    In Plaintiff's Second Amended Petition, CBX alleged that Espada was professionally negligent.  (Ex. I, CBX 429650-000126.)

163.    In Plaintiff's Second Amended Petition, CBX alleged that Espada was negligent (i.e., non-professionally negligent).  (Ex. D, CBX 429650-000126.)

> 33.    Espada was retained for the purpose of implementing Baker's plan,
> procuring and using the proper materials to include casing, and performing related oil
> and gas well drilling and completion services to deliver a producing well for Plaintiff.
> Espada owed a duty to perform these services within recognized industry standards
> and practices, as well as to deliver a competent well design that would result in a
> completed and productive well.
>
> 34.    The Baker and Espada Defendants were negligent in their performance of
> their respective duties, as more fully explained and detailed in the attached Affidavit
> and Certificate of Merit of David E. Pritchard, P.E. (Licensed Engineer).   These
> deviations from accepted industry practices and standards constituted professional
> negligence.  The Baker and Espada Defendants' actions contributed to and permitted
> the catastrophic failure of the Picosa Creek IV operation.

164.    In Plaintiff's Second Amended Petition, CBX alleged that "Espada was retained for the purpose of implementing Baker's Plan." (*Id.*)

165.    In fact, Espada's role was to execute Baker's plan.

166.    Plaintiff's Second Amended Petition did not contain a claim for contractual indemnification.

### c)    The Detail of the Property Damage Grew

167.    In Plaintiff's Second Amended Petition, CBX made the damage allegations as were made in Plaintiff's Original Petition and Plaintiff's First Amended Petition. (Ex. I, CBX 429650-000128:129.)

> ## XI.    DAMAGES
>
> 47.    As a result of the action and conduct of the Defendants, Plaintiff suffered actual and consequential damages. These damages flow from the loss of its drilling
>
> operations due to the subsequent forced plugging and abandoning of the Picosa Creek IV well.
>
> 48.    Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other damages.

168.    In Plaintiff's Second Amended Petition, CBX made the "additional damage allegations" first announced in Plaintiff's First Amended Petition. (Ex. I, CBX 429650-000126:27.)

negligence.  The Baker and Espada Defendants' actions contributed to and permitted the catastrophic failure of the Picosa Creek IV operation.

36.    The breaches by the Baker and Espada Defendants were proximate causes of the casing failure and Plaintiff's damages.

169.    In Plaintiff's Second Amended Petition, CBX described property damage not described in CBX's prior petitions, to wit:  "[O]n or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property"). . . . On or about January 24, 2012, Espada . . . discovered that the production casing was fractured at about 3,402 feet.  The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use. . . .  Accordingly, the Picosa Creek IV well was plugged and abandoned. . . .  The 5 ½" Production Casing . . . damaged, among other property, the August 6, 2011 Property."  (Ex. I, CBX 429650-000122:23.)

14.    **Wellbore and Surface Casing**:  On or before August 6, 2011, Espada and/or its subcontractors fully drilled the Picosa Creek IV well bore and placed 850 feet of 9 5/8" surface casing.  On or before August 6, 2011, Plaintiff paid money or incurred liabilities to construct the wellbore and surface casing – i.e., Plaintiff owned the wellbore and surface casing.  Therefore, on or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property").

17.    **Fractured Production Casing:**  On or about January 24, 2012, Espada and/or its subcontractors attempted to pull the production casing out of the wellbore and discovered that the production casing was fractured at about 3,402 feet.  The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use by repair, replacement, adjustment, or removal. Accordingly, the Picosa Creek IV well was plugged and abandoned.

18.    TAS Drilling, LLC assigned its rights related to this subject matter to CBX Resources, LLC.

19.    The 5 ½" Production Casing ("The Product") manufactured and sold by the Defendants listed in paragraphs three through six above damaged, among other property, the August 6, 2011 Property.

(1)    **Drilling Operations Property**

170.    In Plaintiff's Second Amended Petition, CBX alleged that CBX <u>owned</u> property described as "drilling operations" that was located beneath the surface of the earth in a well or hole (hereinafter **"Drilling Operations Property"**).  (Ex. I, CBX 429650-000123.)

actual and consequential damages. These damages flow from the loss of its drilling

*Plaintiff's Second Amended Petition*                                     Page 9 of 13

CBX 429650

operations due to the subsequent forced plugging and abandoning of the Picosa Creek

171.    In Plaintiff's Second Amended Petition, CBX described the Drilling Operations Property as including "casing, pipe, . . . tool and other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well [Picosa Creek IV well] or hole. . . ." (Ex. I, CBX 429650-000122.)

172.    As defined, Drilling Operations Property is tangible property.

14.    **Wellbore and Surface Casing:**  On or before August 6, 2011, Espada and/or its subcontractors fully drilled the Picosa Creek IV well bore and placed 850 feet of 9 5/8" surface casing.  On or before August 6, 2011, Plaintiff paid money or incurred liabilities to construct the wellbore and surface casing -- i.e., Plaintiff owned the wellbore and surface casing.  Therefore, on or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property").

---

*Plaintiff's Second Amended Petition*                                      Page 3 of 13

CBX 429650

---

15.    **Production Casing and Completion Liner:**  On or about August 6, 2011, Espada and/or its subcontractors placed 5,708 feet of production casing and a Baker Hughes FracPoint Completion System into the production casing.

16.    **Frac Job:**  On or about October 25, 2011 (80 days after the production casing had been placed in the wellbore), Espada and/or its subcontractors attempted to pressurize the Baker Hughes FracPoint Completion System to fracture and stimulate five production zones.

173.    In Plaintiff's Second Amended Petition, CBX alleged that the Drilling Operations Property was damaged.  (Ex. I, CBX 429650-000123.)

> actual and consequential damages.  These damages flow from the loss of its drilling
>
> _Plaintiff's Second Amended Petition_                                              Page 9 of 13
>
>                                                                      CBX 429650
>
> operations due to the subsequent forced plugging and abandoning of the Picosa Creek

174.    In Plaintiff's Second Amended Petition, CBX alleged that the damage to the Drilling Operations Property arose out of operations in connection with the Picosa Creek IV well.  (CBX 429650-000128:29.)

actual and consequential damages. These damages flow from the loss of its drilling

*Plaintiff's Second Amended Petition*                                                    Page 9 of 13

CBX 429650

operations due to the subsequent forced plugging and abandoning of the Picosa Creek
IV well.

175.    "Underground equipment hazard" (as that term is defined by the CGL
Policy) "includes 'property damage' to casing, pipe, . . . tool and other drilling or well
servicing machinery or equipment located beneath the surface of the earth in any such
well or hole. . . ." (Ex. A, CBX 429650-000053.)

> "Underground equipment hazard" includes "property damage" to any casing, pipe, bit, tool, pump or other
> drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or
> hole or beneath the surface of any body of water.

176.    In Plaintiff's Second Amended Petition, CBX alleged damage to
the Drilling Operations Property that constitutes "property damage" (as "property
damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the
"underground equipment hazard" (as "underground equipment hazard" is defined in

the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well.  (Ex. A, CBX 429650-000053.)

> 2.  The Underground Equipment Hazard Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground equipment hazard" and arising out of operations in connection with any one well.

177.    At the time that the Drilling Operations Property was injured, the Drilling Operations Property was not personal property.

178.    At the time that the Drilling Operations Property was injured, the Drilling Operations Property was not in the care, custody or control of Espada.

179.    Espada did not manufacture, sell, distribute or dispose of the Drilling Operations Property.

180.    Espada did not handle the Drilling Operations Property.

181.    The Drilling Operations Property could not be restored to use.

182.    The Drilling Operations Property was not restored to use.

183.    The Drilling Operations Property was physically injured.

184.    The Drilling Operations Property was injured suddenly and accidentally.

### (2)    Surface Casing Property

185.    In Plaintiff's Second Amended Petition, CBX alleged that CBX owned property described as "surface casing" that was located beneath the surface of the earth in a well or hole (hereinafter **Surface Casing Property**").  (Ex. I, CBX 429650-000122.)

14.    **Wellbore and Surface Casing**:  On or before August 6, 2011, Espada and/or its subcontractors fully drilled the Picosa Creek IV well bore and placed 850 feet of 9 5/8" surface casing.  On or before August 6, 2011, Plaintiff paid money or incurred liabilities to construct the wellbore and surface casing – i.e., Plaintiff owned the wellbore and surface casing.  Therefore, on or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property").

186.    Surface Casing Property is tangible property.

187.    In Plaintiff's Second Amended Petition, CBX alleged that the **Surface Casing Property** was damaged.  (Ex. I, CBX 429650-000123.)

17.    **Fractured Production Casing**:  On or about January 24, 2012, Espada and/or its subcontractors attempted to pull the production casing out of the wellbore and discovered that the production casing was fractured at about 3,402 feet.  The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use by repair, replacement, adjustment, or removal.  Accordingly, the Picosa Creek IV well was plugged and abandoned.

18.    TAS Drilling, LLC assigned its rights related to this subject matter to CBX Resources, LLC.

19.    The 5 ½" Production Casing ("The Product") manufactured and sold by the Defendants listed in paragraphs three through six above damaged, among other property, the August 6, 2011 Property.

188.    In Plaintiff's Second Amended Petition, CBX alleged that the damage to the **Surface Casing Property** arose out of operations in connection with the Picosa Creek IV well. (*Id.*)

189.    "Underground equipment hazard" (as that term is defined by the CGL Policy) "includes 'property damage' to casing . . . located beneath the surface of the earth in any such well or hole. . . ." (Ex. A, CBX 429650-000053.)

> "Underground equipment hazard" includes "property damage" to any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

190.    In Plaintiff's Second Amended Petition, CBX alleged damage to the **Surface Casing Property** that constitutes "property damage" (as "property damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the "underground equipment hazard" (as "underground equipment hazard" is defined in the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well. (Ex. A, CBX 429650-000053.)

> 2.    The Underground Equipment Hazard Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground equipment hazard" and arising out of operations in connection with any one well.

191.    At the time that the Surface Casing Property was injured, the Surface Casing Property was not personal property.

192.    At the time that the Surface Casing Property was injured, the Surface Casing Property was not in the care, custody or control of Espada.

193.    Espada did not manufacture, sell, distribute or dispose of the Surface Casing Property.

194.    Espada did not handle the Surface Casing Property.

195.    The Surface Casing Property could not be restored to use.

196.    The Surface Casing Property was not restored to use.

197.    The Surface Casing Property was physically injured.

198.    The Surface Casing Property was injured suddenly and accidentally.

### (3)    Unrecovered Production Casing Property

199.    In Plaintiff's Second Amended Petition, CBX alleged that CBX owned property described as "unrecovered production casing" that was located beneath the surface of the earth in a well or hole (hereinafter "**Unrecovered Production Casing Property**"). (Ex. I, CBX 429650-000123.)

15.    **Production Casing and Completion Liner:**  On or about August 6, 2011, Espada and/or its subcontractors placed 5,708 feet of production casing and a Baker Hughes FracPoint Completion System into the production casing.

16.    **Frac Job:**  On or about October 25, 2011 (80 days after the production casing had been placed in the wellbore), Espada and/or its subcontractors attempted to pressurize the Baker Hughes FracPoint Completion System to fracture and stimulate five production zones.

17.    **Fractured Production Casing:**  On or about January 24, 2012, Espada and/or its subcontractors attempted to pull the production casing out of the wellbore and discovered that the production casing was fractured at about 3,402 feet.  The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use by repair, replacement, adjustment, or removal. Accordingly, the Picosa Creek IV well was plugged and abandoned.

200.    Unrecovered Production Casing Property is tangible property.

201.    In Plaintiff's Second Amended Petition, CBX alleged that the **Unrecovered Production Casing Property** was damaged. (*Id.*)

202.    In Plaintiff's Second Amended Petition, CBX alleged that the damage to the **Unrecovered Production Casing Property** arose out of operations in connection with the Picosa Creek IV well. (*Id.*)

203.    "Underground equipment hazard" (as that term is defined by the CGL Policy) "includes 'property damage' to casing. . . located beneath the surface of the earth in any such well or hole. . . ." (Ex. A, CBX 429650-000053.)

> "Underground equipment hazard" includes "property damage" to any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

204.    In Plaintiff's Second Amended Petition, CBX alleged damage to the **Unrecovered Production Casing Property** that constitutes "property damage" (as "property damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the "underground equipment hazard" (as "underground equipment hazard" is defined in the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well. (Ex. A, CBX 429650-000053.)

> 2.    The Underground Equipment Hazard Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground equipment hazard" and arising out of operations in connection with any one well.

205.    At the time that the Unrecovered Production Casing Property was injured, the Unrecovered Production Casing Property was not personal property.

206.    At the time that the Unrecovered Production Casing Property was injured, the Unrecovered Production Casing Property was not in the care, custody or control of Espada.

207.    Espada did not manufacture, sell, distribute or dispose of the Unrecovered Production Casing Property.

208.    Espada did not handle the Unrecovered Production Casing Property.

209.    The Unrecovered Production Casing Property could not be restored to use.

210.    The Unrecovered Production Casing Property was not restored to use.

211.    The Unrecovered Production Casing Property was physically injured.

212.    The Unrecovered Production Casing Property was injured suddenly and accidentally.

### (4)    Well Property

213.    In Plaintiff's Second Amended Petition, CBX alleged that CBX owned property described as a "well" in or through which exploration for or production of any substance was carried on (hereinafter "**Well Property**"). (Ex. I, CBX 429650-000122:123, 129.)

14.    **Wellbore and Surface Casing**:  On or before August 6, 2011, Espada and/or its subcontractors fully drilled the Picosa Creek IV well bore and placed 850 feet of 9 5/8" surface casing.  On or before August 6, 2011, Plaintiff paid money or incurred liabilities to construct the wellbore and surface casing – i.e., Plaintiff owned the wellbore and surface casing.  Therefore, on or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property").

17.    **Fractured Production Casing**:  On or about January 24, 2012, Espada and/or its subcontractors attempted to pull the production casing out of the wellbore and discovered that the production casing was fractured at about 3,402 feet.  The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use by repair, replacement, adjustment, or removal. Accordingly, the Picosa Creek IV well was plugged and abandoned.

48.    Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other damages.

214.    Well Property is tangible property.

215.    In Plaintiff's Second Amended Petition, CBX alleged that the **Well Property** was damaged.  (*Id.*)

216.    In Plaintiff's Second Amended Petition, CBX alleged that the damage to the **Well Property** arose out of operations in connection with the Picosa Creek IV well. (*Id.*)

217.    "Underground resources hazard" (as that term is defined by the CGL Policy) "includes 'property damage' to [a]ny well . . . in or through which exploration for or production of any substance is carried on." (Ex. A, CBX 429650-000053.)

> "Underground resources hazard" includes "property damage" to any of the following:
>
> a.  Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;
>
> b.  Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on.

218.    In Plaintiff's Second Amended Petition, CBX alleged damage to the **Well Property** that constitutes "property damage" (as "property damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the "underground resources hazard" (as "underground resources hazard" is defined in the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well. (Ex. A, CBX 429650-000053.)

> 1.  The Underground Resources Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources hazard" and arising out of operations in connection with any one well;

219.    At the time that the Well Property was injured, the Well Property was not personal property.

220.    At the time that the Well Property was injured, the Well Property was not in the care, custody or control of Espada.

221. Espada did not manufacture, sell, distribute or dispose of the Well Property.

222. Espada did not handle the Well Property.

223. The Well Property could not be restored to use.

224. The Well Property was not restored to use.

225. The Well Property was physically injured.

226. The Well Property was injured suddenly and accidentally.

### (5) Oil and Gas Property

227. In Plaintiff's Second Amended Petition, CBX alleged that CBX owned property described as "oil and gas" and "past production" and "future production" which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water (hereinafter "**Oil and Gas Property**"). (Ex. I, CBX 429650-000122:123, 129.)

14. **Wellbore and Surface Casing**: On or before August 6, 2011, Espada and/or its subcontractors fully drilled the Picosa Creek IV well bore and placed 850 feet of 9 5/8" surface casing. On or before August 6, 2011, Plaintiff paid money or incurred liabilities to construct the wellbore and surface casing – i.e., Plaintiff owned the wellbore and surface casing. Therefore, on or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property").

19.    The 5 ½" Production Casing ("The Product") manufactured and sold by the Defendants listed in paragraphs three through six above damaged, among other property, the August 6, 2011 Property.

48.    Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other damages.

228.    Oil and Gas Property is tangible property.

229.    In Plaintiff's Second Amended Petition, CBX alleged that the **Oil and Gas Property** was damaged.  (*Id*.)

230.    In Plaintiff's Second Amended Petition, CBX alleged that the damage to the **Oil and Gas Property** arose out of operations in connection with the Picosa Creek IV well.  (CBX 429650-000128:29.)

231.    "Underground resources hazard" (as that term is defined by the CGL Policy) "includes 'property damage' to [o]il, gas . . . which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water."  (Ex. A, CBX 429650-000053.)

"Underground resources hazard" includes "property damage" to any of the following:
a.  Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

232.    In Plaintiff's Second Amended Petition, CBX alleged damage to the **Oil and Gas Property** that constitutes "property damage" (as "property damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the "underground

resources hazard" (as "underground resources hazard" is defined in the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well. (Ex. A, CBX 429650-000053.)

> 1.  The Underground Resources Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources hazard" and arising out of operations in connection with any one well;

233.    At the time that the Oil and Gas Property was injured, the Oil and Gas Property was not personal property.

234.    At the time that the Oil and Gas Property was injured, the Oil and Gas Property was not in the care, custody or control of Espada.

235.    Espada did not manufacture, sell, distribute or dispose of the Oil and Gas Property.

236.    Espada did not handle the Oil and Gas Property.

237.    The Oil and Gas Property could not be restored to use.

238.    The Oil and Gas Property was not restored to use.

239.    The Oil and Gas Property was physically injured.

240.    The Oil and Gas Property was injured suddenly and accidentally.

### (6)    Wellbore Property

241.    In Plaintiff's Second Amended Petition, CBX alleged that CBX owned property described as a "wellbore" in or through which exploration for or production of any substance was carried on (hereinafter **"Wellbore Property"**). (Ex. I, CBX 429650-000122:123.)

---

Plaintiff's First Amended Complaint                                     Page 45 of 73

14.    **Wellbore and Surface Casing**:  On or before August 6, 2011, Espada and/or its subcontractors fully drilled the Picosa Creek IV well bore and placed 850 feet of 9 5/8" surface casing.  On or before August 6, 2011, Plaintiff paid money or incurred liabilities to construct the wellbore and surface casing – i.e., Plaintiff owned the wellbore and surface casing.  Therefore, on or before August 6, 2011, Plaintiff owned the wellbore, surface casing and future oil and gas revenues made possible by the wellbore and surface casing (the "August 6, 2011 Property").

17.    **Fractured Production Casing**:  On or about January 24, 2012, Espada and/or its subcontractors attempted to pull the production casing out of the wellbore and discovered that the production casing was fractured at about 3,402 feet.  The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use by repair, replacement, adjustment, or removal.  Accordingly, the Picosa Creek IV well was plugged and abandoned.

18.    TAS Drilling, LLC assigned its rights related to this subject matter to CBX Resources, LLC.

19.    The 5 ½" Production Casing ("The Product") manufactured and sold by the Defendants listed in paragraphs three through six above damaged, among other property, the August 6, 2011 Property.

242.    Wellbore Property is tangible property.

243.    In Plaintiff's Second Amended Petition, CBX alleged that the **Wellbore Property** was damaged.  (*Id.*)

244.    In Plaintiff's Second Amended Petition, CBX alleged that the damage to the **Wellbore Property** arose out of operations in connection with the Picosa Creek IV well. (*Id.*)

245.    "Underground resources hazard" (as that term is defined by the CGL Policy) "includes 'property damage' to [a]ny well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on." (Ex. A, CBX 429650-000053.)

> "Underground resources hazard" includes "property damage" to any of the following:
>     **a.**  Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;
>     **b.**  Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on.

246.    In Plaintiff's Second Amended Petition, CBX alleged damage to the **Wellbore Property** that constitutes "property damage" (as "property damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the "underground resources hazard" (as "underground resources hazard" is defined in the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well. (Ex. A, CBX 429650-000053.)

> **1.**  The Underground Resources Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources hazard" and arising out of operations in connection with any one well;

247.    At the time that the Wellbore Property was injured, the Wellbore Property was not personal property.

248.    At the time that the Wellbore Property was injured, the Wellbore Property was not in the care, custody or control of Espada.

249.    Espada did not manufacture, sell, distribute or dispose of the Wellbore Property.

250.    Espada did not handle the Wellbore Property.

251.    The Wellbore Property could not be restored to use.

252.    The Wellbore Property was not restored to use.

253.    The Wellbore Property was physically injured.

254.    The Wellbore Property was injured suddenly and accidentally.

### (7)    Lease Property

255.    In Plaintiff's Second Amended Petition, CBX alleged that CBX owned property described as a "lease" (i.e., an "area") in or through which exploration for or production of any substance was carried on (hereinafter "**Lease Property**"). (Ex. I, CBX 429650-000122:123.)

> 48.    Because of the casing failure, Plaintiff lost its (1) initial lease cost, (2) lease extension, (3) casing cost, (4) initial well cost, (5) past production and (6) future production, among other damages.

256.    Lease Property is tangible property. *See Mitchell Energy Corp. v. Samson Res Co.*, 80 F.3d 976, 982 (5th Cir. 1996); *Energy Res., LLC v. Petroleum Sols. Int'l, LLC*, No. H-08-656, 2011 WL 3648083, *13 (S.D. Tex. Aug. 17, 2011)("In Texas, an oil and gas lease is considered an interest in tangible property.")

257.   In Plaintiff's Second Amended Petition, CBX alleged that the **Lease Property** was damaged.  (Ex. I, CBX 429650-000122:123.)

258.   In Plaintiff's Second Amended Petition, CBX alleged that the damage to the **Lease Property** arose out of operations in connection with the Picosa Creek IV well. (*Id.*)

259.   "Underground resources hazard" (as that term is defined by the CGL Policy) "includes 'property damage' to [a]ny . . . area in or through which exploration for or production of any substance is carried on."  (Ex. A, CBX 429650-000053.)

"Underground resources hazard" includes "property damage" to any of the following:

    **a.**  Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

    **b.**  Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on.

260.   In Plaintiff's Second Amended Petition, CBX alleged damage to the **Lease Property** that constitutes "property damage" (as "property damage" is defined in the CGL Policy, Ex. A, CBX 429650-000017) included within the "underground resources hazard" (as "underground resources hazard" is defined in the UREC Endorsement, Ex. A, CBX 429650-000053) that arose out of operations in connection with any one well. (Ex. A, CBX 429650-000053.)

**1.**   The Underground Resources Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources hazard" and arising out of operations in connection with any one well;

261.   At the time that the Lease Property was injured, the Lease Property was not personal property.

262. At the time that the Lease Property was injured, the Lease Property was not in the care, custody or control of Espada.

263. Espada did not manufacture, sell, distribute or dispose of the Lease Property.

264. Espada did not handle the Lease Property.

265. The Lease Property could not be restored to use.

266. The Lease Property was not restored to use.

267. The Lease Property was physically injured.

268. The Lease Property was injured suddenly and accidentally.

### d)    Occurrence: Fracturing of the Production Casing

269. The CGL Policy defines "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. A, CBX 429650-000016.)

**13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

270. In Plaintiff's Second Amended Petition, CBX alleged:    "On or about January 24, 2012, Espada . . . attempted to pull the production casing out of the wellbore and discovered that the production casing was fractured at about 3,402 feet. . . . The 5 ½" Production Casing . . . damaged, among other property, the August 6, 2011 Property." (Ex. I, CBX 429650-000123.)

271. Said fracturing of the production casing was accidental.

272. Said fracturing of the production casing was sudden.

273.    Said fracturing of the production casing was physical.

274.    ACE American's Claims Director for Complex Claims, Matthew Specter, affirmatively described the occurrence as a sudden, accidental and physical fracturing of the production casing, explaining: "the casing was installed and below ground and was severed during Espada's pressurizing and fracturing operations."    (Ex. N, CBX 429650-000127.)

275.    Said fracturing of the production casing constitutes an "occurrence" as defined in the CGL Policy.

### 8.    August 13, 2015:  Espada's First Amended Third-Party Petition

276.    On August 13, 2015, Espada served Espada Operating, LLC's First Amended Third Party Petition. (Ex. J.)

277.    In the Underlying Lawsuit, Espada sued three separate parties.    (Ex. J, CBX 429650-000134.)

278.    In Espada Operating, LLC's First Amended Third Party Petition, Espada stated:  "In 2011, CBX hired Espada to perform services related to drilling and operating a the [sic] Picosa Creek 1V well located on an oil and gas lease in Zavala County, Texas (the "Well").  Espada was the operator at the Well Site." (Ex. J, CBX 429650-000135.)

9.    In 2011, CBX hired Espada to perform services related to drilling and operating a the Picosa Creek 1V well located on an oil and gas lease in Zavala County, Texas (the "Well"). Espada was the operator at the Well Site. In October 2011, hydraulic fracturing operations

---

279.    In Espada Operating, LLC's First Amended Third Party Petition, Espada articulated Espada's understanding of an occurrence alleged by CBX as: "CBX alleges that a catastrophic failure of the casing occurred down hole in the Well.  The Well allegedly could not be repaired and was plugged and abandoned." (Ex. J, CBX 429650-000135.)

> about January 23, 2012, CBX alleges that a catastrophic failure of the casing occurred down hole in the Well. The Well allegedly could not be repaired and was plugged and abandoned.

280.    In Espada Operating, LLC's First Amended Third Party Petition, Espada indicated that Espada understood that it was being sued for "simple" negligence (i.e., negligence not related to professional services).  (Ex. J, CBX 429650-000135:136.)

> 12.    On October 29, 2013, CBX filed suit against Third-Party Plaintiff Espada, among others, in Zavala County, Texas. CBX alleges it sustained damages due to a failure of the casing used in the Well. CBX further alleges that Espada was negligent in the performance of its duties of "procuring and using the proper materials to include casing, and to perform related oil and gas
>
> related well drilling and completion services to deliver a producing well for" CBX. CBX has also made claims against the casing suppliers / manufacturers, and another oil and gas service provider.
>
> 13.    CBX's current Petition is critical of the work and materials provided for the Well.

G.    *STOWERS* DEMAND

281.    On September 22, 2015, CBX served a "*Stowers* Demand" on ACE American and ACE Property through Royston Rayzor.  (Ex. K, CBX 429650-000160.)

September 22, 2015

Mr. Ewing E. Sikes, III                                    *via Fax:* **(956) 542-4370**
Mr. Robert L. Guerra, Jr.
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
55 Cove Circle
Brownsville, Texas 78521

RE:  Cause No. 13-02-12940-ZCV; *CBX Resources, LLC v. Daewoo International Corp, et al*
      In the 293rd Judicial District, Zavala County, Texas
      **WG File:  CBX Resources 429650**

         "RULE 408 CONFIDENTIAL SETTLEMENT COMMUNICATION"

Dear Counsel:

        As you are well aware, we have conducted a significant amount of discovery to
date in this case.  While additional discovery remains outstanding, we believe both
sides are in a position to evaluate the case for settlement purposes in lieu of a formal
mediation and further litigation expenses.  Please consider this correspondence as a
formal *Stowers* demand to fully settle all claims against Espada Operating, LLC., in the
above referenced matter. Please forward this request to your client and the applicable
insurance representatives for their consideration.   As set forth below, Plaintiff's

        282.    The *Stowers* Demand discussed, among other things, Espada's negligence.

(CBX 429650-000160, 162.)

insurance representatives for their consideration.   As set forth below, Plaintiff's
settlement demand is reasonable based on (1) the clear and convincing evidence of your
client's negligence and gross negligence; (2) the undisputable damages in this case; and
(3) our firm's verdict history.

> **Espada Was Grossly Negligent In Failing to Stop Work at the Time It Suspected the Fractured Casing**: Espada's corporate representative admitted that Espada suspected that the casing failed during fracking operations -- the "dropping of the fourth ball." (Billington Dep. 114:9-18.) Rather than stopping work and investigating as a reasonably prudent Operator would under the same or similar circumstances, Espada allowed work to continue that exacerbated the problem ultimately causing the casing to part in its entirety and preventing the full recovery of the production casing. That is, had Espada stopped work once pressure was lost during the fourth ball drop, Espada could have prevented the full diameter casing fracture that would have allowed the recovery of the entire casing subsequently enabling the running of a new casing and full exploitation of the minerals from the well.

283.    In the *Stowers* Demand, CBX made a settlement demand within policy limits. (Ex. K, CBX 429650-000163.)

> Nonetheless, Plaintiff demands the lesser of the following amounts in full and final settlement of CBX Resources's claims against Espada Operating, LLC:
>
> (1) $121,827,692; or
> (2) the policy limits for all applicable insurance policies covering or responding to the occurrence made the basis of this lawsuit, specifically including
>
>     a. Ace American Insurance Company, Policy No. G24994090 002, policy limits: $1,000,000;
>
>     b. Ace Group – umbrella, Policy No. XOO G24924592; policy limits: $2,000,000.

284.    In the *Stowers* Demand, CBX stated that "[P]ayment of this demand will result in a full, complete, and unconditional release of Plaintiff's claims against Espada Operating, LLC, pursuant to *Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489,491 (Tex. 1998)." (CBX 429650-000163.)

> fees). Payment of this demand will result in a full, complete, and unconditional release of Plaintiff's claims against Espada Operating, LLC, pursuant to *Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998).

285.    As such, the *Stowers* Demand offered a release that was full, complete and unconditional.

286.    In the *Stowers* Demand, CBX stated:    "This demand shall expire automatically and without further notice at 5:00 p.m. CST on October 23, 2015." (CBX 429650-000164.)

> **This demand shall expire automatically and without further notice at 5:00 p.m. CST on October 23, 2015.    After such time and date, Plaintiff's demand will**

287.    On September 30, 2015, Royston Rayzor requested a seven-day extension to respond to the *Stowers* Demand. (Ex. L.)

288.    Royston Rayzor provided two reasons for the extension: "First, I think it helps to have a more successful mediation.  As you know, it takes time for insurance carriers to get their ducks in a row and to make sure we have the maximum authority from all parties.  Second, I don't see how the extension hurts your client." (Ex. M.)

289.    CBX did not extend the October 23, 2015 deadline.

290.    The *Stowers* Demand expired automatically at 5:00 p.m. CST on October 23, 2015.

291.    The *Stowers* Demand expired at a time that ACE American was providing a defense to Espada.

292.    ACE had a duty to accept reasonable settlement offers within policy limits.

293.    CBX offered to settle the claims asserted in the Underlying Lawsuit within the applicable policy limits.

294.    CBX's claims asserted in the Underlying Lawsuit were within the scope of coverage provided by the CGL Policy.

295.   The *Stowers* Demand was reasonable considering the likelihood and degree of Espada's potential exposure to an excess judgment.

296.   Without a defense, Espada was likely to be exposed to a judgment imposing damages in an amount that exceeded the available amounts of coverage under the CGL Policy.

### H.   ACE'S NOTICE OF WITHDRAWAL OF DEFENSE

297.   Prior to October 15, 2015, ACE American did not send a reservation of rights letter to Espada.

298.   Prior to October 15, 2015, ACE American did not reserve any rights regarding the Underlying Lawsuit.

299.   On October 15, 2015, Matthew Spector wrote a letter to Lee Roy Billington (hereinafter "Withdrawal Letter"). (Ex. N.)

300.   In the Withdrawal Letter, Mr. Spector told Mr. Billington:   "ACE American notifies Espada of its intent to cease the retention of defense counsel effective 14 days from the date of this letter." (Ex. N.)

> **Notice of Withdrawal of Defense.** As you know, ACE American previously retained the law firm of Royston, Rayzor, Vickery & Williams ("Royston Rayzor") as Espada's defense counsel. Due to the denial under the CGL policy, ACE American notifies Espada of its intent to cease the retention of defense counsel effective 14 days from the date of this letter. We are providing the 14 days to provide a reasonable opportunity for Espada to arrange for Royston Rayzor's continued retention thereafter or to retain new counsel, at its option.

301.   In the Withdrawal Letter, Mr. Spector acknowledged that CBX's allegations included at least one claim against Espada that sounded in non-professional liability negligence to wit:   "The causes of action against Espada are negligence. . . ." (Ex. N, CBX 429650-000170.)

---

out of the wellbore and discovered that the production casing was fractured at about 3,402 feet. The bottom portion of the casing (below 3,402 feet) could not be recovered, and the wellbore could not be restored to use by repair, replacement, adjustment, or removal ... [and] the Picosa Creek IV well was plugged and abandoned." The causes of action against Espada are negligence (inclusive of professional negligence and Res Ipsa Loquitur theories), gross negligence and breach of contract. The alleged damages

302. In the Withdrawal Letter, Mr. Spector said, "CBX's allegations do not fall within the insuring agreement as there is no claim of physical injury to tangible property or loss of use of tangible property." (Ex. N, CBX 429650-000171.)

CBX's allegations do not fall within the insuring agreement as there is no claim of physical injury to tangible property or loss of use of tangible property. Rather, the claim is of initial faulty construction of the well (more particularly, the well's production casing) that precluded the well's completion and placement into service. There is no contention that the well existed in an un-faulty state and was then made faulty by physical injury; nor could the use of the well be lost given that there was never an actual use of the well in the first place.

303. Mr. Spector failed to support that statement with supporting language from the CGL Policy.

304. In the Withdrawal Letter, Mr. Spector took the erroneous position that because there was "no contention [in the petition] that the well existed in an un-faulty state and was then made faulty by physical injury," no insurance was provided by the CGL Policy. (*Id.*)

305. ACE American cannot support Mr. Spector's position with language from the CGL Policy.

306. In the Withdrawal Letter, Mr. Spector took the erroneous position that because there was "never an actual use of the well," no insurance was provided by the CGL Policy. (*Id.*)

307.    ACE American cannot support Mr. Spector's above stated positions with language from the CGL Policy.

308.    In the Withdrawal Letter, Mr. Spector erroneously claimed that several exclusions justified denial of coverage:

    a.  "exclusions j.(4)-(6), as amended by endorsement,"

    b.  "b. for Contractual Liability,"

    c.  "k. for Damage to Your Product,"

    d.  "l. for Damage to Your Work,"

    e.  "m. for Damage to Impaired Property or Property Not Physically Injured," and

    f.  "the endorsement entitled Exclusion – Engineers, Architects or Surveyors Professional Liability."

(CBX 429650-000171:172.)

309.    Mr. Spector did not consider *Mid–Continent Cas. Co. v. Bay Rock Operating Co.,* 614 F.3d 105, 115–16 (5th Cir.2010) in the analysis of the coverage issues presented in the Withdrawal Letter.

310.    Mr. Spector did not consider *Mid-Continent Cas. Co. v. Krolczyk,* 408 S.W.3d 896 (Tex. App.--Houston {1st Dist.] 2013, pet. denied) in the analysis of the coverage issues presented in the Withdrawal Letter.

311.    Mr. Spector did not hire counsel independent from Royston Rayzor to analyze the coverage issues presented in the Withdrawal Letter.

312.    Mr. Spector used Royston Rayzor, in part, as the source of the information it articulated in the Withdrawal Letter.

313.    ACE American did not file a declaratory judgment action regarding the coverage issues presented in the Withdrawal Letter.

**I.    ROYSTON RAYZOR'S WITHDRAWAL**

314.    ACE American appointed Royston Rayzor as defense counsel for Espada in the Underlying Lawsuit in November 2013. (Ex. O, CBX 429650-000174.)

315.    On November 19, 2013, Royston Rayzor filed an answer in the Underlying Lawsuit on behalf of Espada. (Ex. E.)

316.    On October 15, 2015, ACE advised that it had denied coverage for the lawsuit, and would cease retaining Royston Rayzor to defend Espada, effective October 30, 2015. (*Id.*)

317.    Espada told Royston Rayzor that Espada lacked the financial ability to retain Royston Rayzor to defend it. (Ex. O, CBX 429650-000175.)

318.    On November 4, 2015, nevertheless, Royston Rayzor filed a Motion to Withdraw as Counsel for Espada Operating, LLC. (Ex. M.)

> Good cause exists for granting this motion.  **Royston Rayzor was appointed as defense counsel for Espada in the above styled cause of action in November 2013 by Espada's insurer, ACE American Insurance Company ("ACE").  On October 15, 2015, ACE advised that it had denied coverage for the lawsuit, and would cease retaining Royston to defend Espada, effective October 30, 2015.**

> Espada indicated that it lacks financial ability to retain Royston to defend it in this case, and could not pay legal fees incurred beyond October 30, 2015.

319.    The Motion to Withdraw as Counsel for Espada Operating, LLC, noted that trial was set on February 9, 2016.  (Ex. O, CBX 429650-000175.)

---

### PENDING SETTINGS AND DEADLINES

Pursuant to this Court's Third Amended Docket Control Order, issued on December 30, 2014, and the Amended Trial Setting, issued October 13, 2015, the following deadlines remain:

- Mediation deadline with Judge Elma Teresa Salinas Ender- **November 30, 2015**
- Dispositive Motion Deadline- **December 11, 2015**
- Pretrial Conference- **January 11, 2016 at 10:00 AM**
- Docket Call- **February 1, 2016 at 10:00 AM**
- Trial February- **9, 2016 1:30 PM**

---

320.    On November 30, 2015, the state trial court granted Royston Rayzor's Motion to Withdraw as Counsel for Espada Operating, LLC.  (Ex. P.)

321.    ACE American selected Royston Rayzor as Espada's defense counsel.

322.    ACE American provided Royston Rayzor as the defense counsel to Espada without serving a reservation of rights letter.

323.    Royston Rayzor represented Espada for over two-years in the Underlying Lawsuit.

324.    Royston Rayzor withdrew as counsel for Espada approximately seventy-one (71) days before trial.

J.    TRIAL OF THE UNDERLYING LAWSUIT

325.    On February 1, 2015 (approximately sixty-three days after Royston Rayzor withdrew), the court held a docket call of the Underlying Lawsuit as per the scheduling order agreed to by Royston Rayzor.  (Ex. H, O.)

---

326.    On February 1, 2015, counsel for Plaintiff noted on the record that Espada failed to appear and requested entry of judgment in favor of Plaintiff.

327.    In turn, the court ordered that judgment would be entered in favor of CBX and set the matter to be heard on February 10, 2015 so that evidence could be heard in support of the judgment.

328.    During the February 10, 2016 trial, the court admitted the testimony of six witnesses. (Ex. R.)

329.    During the February 10, 2016, the court admitted into evidence forty-seven exhibits. (Ex. R, CBX 429650-000222:223, 30:25-31:7.)

330.    During the February 10, 2016 trial, CBX offered expert testimony that Espada was negligent:

> Q.    Is it fair to say that you know <u>what an</u> operator should do in serving as an operator with regard to any given prospect or well.
>
> A .    Yes, sir, it is.
>
> Q.    When -- now, you have been asked to provide an opinion about whether or not Espada was negligent in building the well?
>
> A.    I have.
>
> Q .    And you understood when you came to that opinion that the term "<u>negligence" means</u>: "Failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances"?
>
> A.    That's correct.
>
> Q.    And you understood that "<u>ordinary care</u>" means: "That degree of care that would be used by <u>a person of ordinary prudence</u> under the same or similar circumstances"?

A.    Correct.

Q.    And you understood that "proximate cause" means: "A cause that was a substantial factor in bringing about the occurrence or injury and without which cause such occurrence or injury would not have occurred"?

A.    That's correct.

Q.    You also understood with regard to proximate cause that, "In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence or injury or similar occurrence or injury might reasonably result therefrom"?

A.    Yes.

Q.    And you also understood that there may be more than one proximate cause of an occurrence or injury?

A.    I do.

Q.    Did the negligence of Espada Operating, LLC, proximately cause the fractured casing in question and result in loss of market value described by Mr. Tomblin"?

A.    Yes.

(Ex. R, CBX 429650-000266:68, 74:21-76:12.)

331.    During the February 10, 2016 trial, CBX offered expert testimony of Charles Tomblin who established a total damage amount of $105,674,240.  (Ex. R, CBX 429650-000265, 73:8-10.)

**K.    JUDGMENT ENTERED**

332.    On February 10, 2016, the court entered judgment in favor of CBX Resources, LLC and against Espada Operating, LLC in the amount of $105,674,240 together with interest at the rate of five percent (5%) per annum, compounded annually, from the date of judgment until paid in full.  (Ex. Q.)

333.    On February 10, 2016, the court "ordered, adjudged and decreed that Plaintiff CBX Resources, LLC prevail[ed] on its negligence claim against Defendant Espada Operating, LLC."  (Ex. Q, CBX 429650-000191.)

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Plaintiff CBX Resources, LLC prevail on its negligence claim against Defendant Espada Operating, LLC, and be, and is, hereby awarded judgment against Defendant Espada Operating, LLC.

334.    By the judgment, Espada became legally obligated to pay damages to CBX.

335.    The judgment has harmed Espada because the judgment has affected Espada's credit and has subjected Espada's nonexempt property to sudden execution and forced sale.

336.    The judgment is final and non-appealable.

**L.    TRANSFER ORDER**

337.    On November 1, 2016, the court in the Underlying Lawsuit signed and entered Order for Turnover Relief and ordered that:  "ownership of the Cause of Action Property [as defined in that order] is, by entry of this order, transferred to CBX Resources, LLC."

338.    Said order defined "Cause of Action Property" to include "causes of action against Espada's insurers, including but not limited to ACE American Insurance Company and ACE Property and Casualty Insurance Company and their affiliates, parents and subsidiaries. . . . "

---

Plaintiff's First Amended Complaint

339.    Said order also ordered Espada to execute an assignment of the causes of action to CBX.

340.    Pursuant to said order, on November 8, 2016, Defendant Espada Operating, LLC assigned any and all of its causes of action against ACE AMERICAN INSURANCE COMPANY and ACE PROPERTY AND CASUALTY INSURANCE COMPANY to Plaintiff CBX Resources, LLC.

**M.    STANDING**

341.    CBX has standing to bring this lawsuit as a judgment creditor of Espada.

342.    CBX has standing to bring this lawsuit as a third-party beneficiary of the CGL Policy.

343.    CBX has standing to bring this lawsuit as a third-party beneficiary of the Umbrella Policy.

344.    CBX has standing to bring this lawsuit as the owner (by transfer order) of Espada's contractual and extra-contractual claims against ACE American and ACE Property.

## VI.    CAUSES OF ACTION

**A.    COUNT 1 – BREACH OF *STOWERS* DUTY TO REASONABLY SETTLE CLAIMS WITHIN THE SCOPE OF COVERAGE AND FOR AN AMOUNT WITHIN THE LIMITS OF THE APPLICABLE POLICY**

345.    Plaintiff incorporates herein, by reference, any and all statements made throughout this Complaint as if fully set forth in this count.

346.    CBX is the owner of Espada's contractual and extra-contractual claims against ACE.

347.    Espada was insured under contracts issued by ACE American and ACE Property.

348.    CBX asserted a liability claim against Espada.   The allegations of fact concerning that claim against Espada were sufficient to bring those claims within the scope of coverage afforded by the express terms of the CGL Policy and Umbrella Policy.

349.    CBX offered to settle the covered claim against Espada within the limits of the CGL Policy and Umbrella Policy with Espada and its insurers.

350.    An ordinary, prudent insurer would have accepted that offer considering the likelihood and degree of the insured's potential exposure to an excess judgment.

351.    ACE American and ACE Property owed Espada a duty to accept reasonable settlement offers within the policy limits.

352.    ACE American and ACE Property breached that duty of care to Espada by not accepting CBX's reasonable settlement offer.

353.    The breach of the duty owed ACE American and ACE Property to accept reasonable settlement offers concerning covered claims for amounts within the stated limits of the applicable policies proximately caused injury to Espada when a judgment was rendered against Espada in excess of the policy limits.

354.    CBX, as the owner of Espada's contractual and extra-contractual claims, seeks damages in the amount of at least $105,674,240, together with interest at the rate of five percent (5%) per annum, compounded annually from the date of judgment until paid in full, which is the amount of the judgment rendered against Espada in the underlying suit. This amount is within the jurisdictional limits of this Court.

### B.    COUNT 2 – BAD FAITH

355.    CBX incorporates herein, by reference, any and all statements made throughout this Complaint as if fully set forth in this count.

356.    CBX is the owner of Espada's contractual and extra-contractual claims against ACE.

357.    In the alternative to other counts, ACE American and ACE Property breached ACE American and ACE Property's duty of good faith and fair dealing.

358.    Espada was an insured under insurance contracts issued by ACE American and ACE Property, which gave rise to a duty of good faith and fair dealing.

359.    ACE American and ACE Property breached their duties by denying a defense to Espada and by denying payment of a covered claim when ACE American and ACE Property knew or should have known that their liability under the policy was reasonably clear.

360.    ACE American and ACE Property's breach of duty proximately caused injury to Espada, which resulted in loss of policy benefits.

361.    ACE American's bad faith denial of its duty to defend approximately sixty-one (61) days before trial, after controlling Espada's defense for over two years, prejudiced Espada and proximately caused injury to Espada, which resulted an excess judgment being entered against Espada. *See Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 136 (Tex. 2010) ("But, if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions."); *Sentry Ins. v. Just Right Prod., Inc.*, No. 4:14-CV-30-O, 2015 WL 10819157, at *7 (N.D. Tex. Jan. 7, 2015) ("However, 'if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions.' *Ulico Cas. Co.*, 262 S.W.3d at 787; *see also Gilbert Tex. Constr., LP v. Underwriters at Lloyd's London*, 327

S.W.3d 118, 136–38 (Tex.2010). 'Although courts cannot judicially rewrite the parties' agreement to create new coverage terms, estoppel does not create a new contract: it only compensates for reliance damages that the insured suffers when the insurer takes over the insured's defense.' *Canal Indem. Co.*, 750 F.Supp.2d at 750. Thus, Just Right may succeed on an estoppel theory if it can establish that Sentry assumed control of the underlying suit and it was prejudiced as a result of Sentry's actions.").

362.    CBX asserts this bad faith claim inclusive of the estoppel theory discussed by several Texas courts. *See Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 136 (Tex. 2010) ("But, if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions."); *Sentry Ins. v. Just Right Prod., Inc.*, No. 4:14-CV-30-O, 2015 WL 10819157, at *7 (N.D. Tex. Jan. 7, 2015) ("However, 'if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions.' *Ulico Cas. Co.*, 262 S.W.3d at 787; *see also Gilbert Tex. Constr., LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 136–38 (Tex.2010). 'Although courts cannot judicially rewrite the parties' agreement to create new coverage terms, estoppel does not create a new contract: it only compensates for reliance damages that the insured suffers when the insurer takes over the insured's defense.' *Canal Indem. Co.*, 750 F.Supp.2d at 750. Thus, Just Right may succeed on an estoppel theory if it can establish that Sentry assumed control of the underlying suit and it was prejudiced as a result of Sentry's actions.").

363.    CBX, as the owner of Espada's contractual and extra-contractual claims, seeks damages in the amount of at least $105,674,240, together with interest at the rate

of five percent (5%) per annum, compounded annually from the date of judgment until paid in full, which is the amount of the judgment rendered against Espada in the underlying suit. This amount is within the jurisdictional limits of this Court.

### C.    COUNT 3 – BREACH OF CONTRACT

364.    Plaintiff incorporates herein, by reference, any and all statements made throughout this Complaint as if fully set forth in this count.

365.    CBX is the owner of Espada's contractual and extra-contractual claims against ACE.

366.    In addition to other counts, CBX sues ACE American and ACE Property for breach of contract.

#### 1.    ACE American

367.    ACE American and Espada entered into a valid and enforceable contract attached hereto as Exhibit A and incorporated herein by reference.

368.    The contract provided that ACE American would defend and indemnify Espada from covered claims and that Espada would pay a premium in exchange.

369.    Espada fully performed its contractual obligations.

370.    ACE American breached the contract by failing to defend Espada in the Underlying Lawsuit.

371.    ACE American's breach caused injury to Espada, which resulted in the damages described below.

372.    CBX, as the owner of Espada's contractual and extra-contractual claims, seeks damages resulting from that breach in the amount of $105,674,240.

373.    As a matter of Texas law, the recovery of attorney's fees is permitted to a party prevailing upon a claim for breach of an oral or written contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8).

### 2.    ACE Property

374.    ACE Property and Espada entered into a valid and enforceable contract represented in part by Exhibit B.

375.    The contract provided that ACE Property would defend and indemnify Espada from covered claims and that Espada would pay a premium in exchange.

376.    Espada fully performed its contractual obligations.

377.    ACE Property breached the contract by failing to indemnify Espada with regard to the Underlying Lawsuit.

378.    ACE Property breached the contract by failing to defend Espada in the Underlying Lawsuit.

379.    ACE Property breached the contract by failing to indemnify Espada with regard to the Underlying Lawsuit.

380.    ACE Property's breach caused injury to Espada, which resulted in the damages described below.

381.    CBX, as the owner of Espada's contractual and extra-contractual claims, seeks damages resulting from that breach in the amount of $105,674,240.

382.    As a matter of Texas law, the recovery of attorney's fees is permitted to a party prevailing upon a claim for breach of an oral or written contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8).

## VII.    COUNT 4 – DECEPTIVE INSURANCE PRACTICES

383.    Plaintiff incorporates here, by reference, any and all statements made throughout this Complaint as if fully set forth in this count.

384.    Plaintiff is a "person" within the meaning of Texas Insurance Code §§ 541.002(2) and 541.151 and therefore has standing to bring this claim.

385.    ACE American and ACE Property are both "persons" within the meaning of Texas Insurance Code § 541.002(2) and 541.151 and therefore subject to liability for this claim.

386.    ACE American and ACE Property engaged in acts and/or practices that violated Texas Insurance Code chapter 541, Subsection B.  Specifically, such acts and/or practices include the following:

   a.    Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim in violation of Texas Insurance Code § 541.060(a)(3); and

   b.    Failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder in violation of Texas Insurance Code § 541.060(a)(4)

387.    ACE American and ACE Property's acts and/or practices were a producing cause of Plaintiff's actual damages described below.

## VIII.    COUNTY 5 - DECLARATORY JUDGMENT

388.    Plaintiff incorporates here, by reference, any and all statements made throughout this Complaint as if fully set forth in this count.

389.    Plaintiff seeks a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202.

390.    CBX seeks the following declarations:

a.    Espada was covered by the CGL Policy.

b.    Espada was covered by the Umbrella Policy.

c.    The Occurrence was covered by the CGL Policy.

d.    The Occurrence was covered by the Umbrella Policy.

e.    ACE American had a duty to defend Espada in the Underlying Lawsuit.

f.    ACE American has a duty to indemnify Espada with regard to the Underlying Judgment.

g.    ACE Property had a duty to defend Espada in the Underlying Lawsuit.

h.    ACE Property has a duty to indemnify Espada with regard to the Underlying Judgment.

391.    As a matter of Texas law, the recovery of attorney's fees is permitted to a party seeking declaratory relief. *See* TEX. CIV. PRAC. & REM. CODE § 37.009.

## IX.    CONDITIONS PRECEDENT

392.    All conditions precedent have been performed or have occurred.

## X.    JURY DEMAND

393.    Plaintiff requests a trial by jury.

## XI.    EXEMPLARY DAMAGES

394.    Plaintiff incorporates here, by reference, any and all statements made throughout this Complaint as if fully set forth in this count.

---

Plaintiff's First Amended Complaint                              Page 71 of 73

395.    Plaintiff's injury resulted from Defendant's gross negligence, malice, or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## XII.    DAMAGES

396.    As a direct and proximate result of defendants' conduct, plaintiff suffered the following injuries and damages.

      a.    Actual damages in the amount of the February 10, 2016 judgment,

      b.    Actual damages in the amount of the unpaid policy limits,

      c.    Exemplary damages,

      d.    Prejudgment and postjudgment interest,

      e.    Court costs, and

      f.    Attorneys' fees.

## XIII.    PRAYER

397.    Plaintiff CBX Resources, LLC prays that Defendants ACE American Insurance Company and ACE Property and Casualty Insurance Company answer herein, that this case be set for trial, and that Plaintiff recover a judgment of and from Defendants for damages in such amount as the evidence may show and the jury may determine to be proper, in addition to pre-judgment interest, post-judgment interest, costs, and all other and further relief to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

By:    /s/ Mark A. Fassold
       MIKAL C. WATTS
       State Bar No. 20981820
       mcwatts@wattsguerra.com
       FRANCISCO GUERRA, IV.
       State Bar No. 00796684
       fguerra@wattsguerra.com
       MARK A. FASSOLD
       State Bar No. 24012609
       mfassold@wattsguerra.com
       WATTS GUERRA LLP
       Four Dominion Drive
       Building Three, Suite 100
       San Antonio, Texas 78257
       Telephone:   210-447-0500
       Facsimile:   210-447-0501
       **ATTORNEYS FOR PLAINTIFF**
       **CBX RESOURCES, LLP**

## CERTIFICATE OF SERVICE

On July 10, 2017, I electronically submitted the foregoing document to all counsel of record via electronic email. I hereby certify that I will serve all counsel of record electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.

Daniel McNeel Lane, Jr.
Email: neel.lane@nortonrosefulbright.com
Manuel Mungia Jr.
Email: manuel.mungia@nortonrosefulbright.com
Norton Rose Fulbright US LLP
300 Convent St., Ste. 2200
San Antonio, Texas 78205
*Counsel for Defendant ACE American Insurance Company and*
*ACE Property and Casualty Insurance Company*

       /s/ Mark A. Fassold
       MARK A. FASSOLD

---

Plaintiff's First Amended Complaint                          Page 73 of 73